J-A20009-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CHAVA SALLY LILOVE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAUL LILOVE, | |
| Appellant | No. 1236 WDA 2017 |

Appeal from the Order Entered July 27, 2017
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD-12-006972-017

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED SEPTEMBER 24, 2018**

Shaul Lilove (Husband) appeals from the July 27, 2017 trial court order that granted some of Husband's exceptions to a master's report and recommendation, relating to the equitable distribution of Husband's and Chava Sally Lilove's (Wife) marital assets.  The report also denied some of Husband's exceptions.[1]  After review, we affirm.

The master's report provided the following, extensive history of the case:

> The parties hereto met at a matchmaking party in Crown Heights/New York City.  Husband is Israeli but was in New York City attending Yeshiva.[1]  Wife was born and raised in Texas and was in New York on business.  After only a two[-]month courtship, they married in Israel on March 13, 1991.  They resided in Israel

_____

[1] Likewise, the same order granted some of Wife's exceptions to the master's report and denied others.

until 2007[2] when they moved to Pittsburgh. The decision to move to the USA was decided for several reasons. Their daughter Chaya had come to the USA with [Wife] and [her g]randmother when she graduated high school and loved it. Husband was seeking better employment opportunities, and Wife believed she would be able to obtain better employment in the USA as well. The parties separated on April 20, 2012. Wife filed for Divorce on that same day.

[1] Husband has dual citizenship. He became a US citizen in 2011 but has returned to Israel since separation.

[2] There was an 11[-]month stay in Houston, Texas during which time their second child, Gur, was born. But the parties returned to Israel. Their [other children,] 1st[] Mendel[,] 3rd Chaya, 4th Levi and 5th Israel were all born in Israel. The four oldest children are now emancipated and only Israel remains a minor. The child support from Israel was reduced to $410/mo.[,] which is the [s]tate[-]ordered guideline amount for one child.

The parties are CHABAD Hassidic Jews and researched cities that would provide the family with an orthodox school for their children and an orthodox community for synagogue, friends and environment. Eventually, although neither had any family in Pittsburgh, they decided that it offered what they were looking for. With a gift of $10,000 from Husband's [m]other, Wife moved to Pittsburgh along with the two oldest boys in the Fall of 2007.[3] She found the family a three bedroom, 2 bath townhouse on Bartlett Street in Squirrel Hill, obtained furniture to prepare for the arrival of the rest of the family, and the children began school. Husband followed with the three younger children in late February 2008. The parties remained in this rental townhouse until 2009 when they purchased the house at 6327 Phillips Avenue in Squirrel Hill.[4] This is a 3,030 sq.ft. 6 bedroom, 2-1/2 bath home which has been at the center of controversy since the parties separated.[5]

[3] Throughout the parties' marriage, they were dependent upon either his parents or hers to provide necessary support for them. When they lived in Israel, Husband's Father provided them with first [one] apartment and then a larger condo. Meanwhile, Wife's [m]other provided cash transfusions into Wife's bank account on a regular basis. Even with family support, there were times that the parties

were on Public Assistance and have shopped regularly at the Squirrel Hill food bank.
4 Again, the parties depended on Husband's [m]other and Wife's [m]other to purchase and furnish the house.
5 This house has no mortgage.  Wife has done her best to pay the taxes and upkeep, but the house is in need of repairs both structural and cosmetic.

Wife discussed her work history in Israel and in the United States.  In Israel, Wife testified that her inability to speak fluent Hebrew was a barrier to her getting jobs.  However[,] [s]he did have two good jobs during the time the parties lived in Israel.  Prior to marriage, Wife earned a degree in Public Relations from the University of Texas in 1984.  She also took several certificate courses while she lived in Israel.

As previously mentioned, the parties are very orthodox.  Wife filed for the divorce in Pennsylvania.  However, based on their faith, Wife requested that Husband cooperate with her in obtaining a "Get[,]" which is a religious divorce.  Husband agreed and in December 2012, the parties drove down to Baltimore to ask for a Get from the Rabbi/authorities that were empowered to grant one.  They filled out all of the paper work and came back to Pittsburgh and waited for the final documents to be sent from Baltimore to Pittsburgh.  In early January [of] 2013, Wife received notice from their Rabbi that the Get had been received.  She immediately went down to the synagogue to pick it up.  When Husband came home from work that afternoon, Wife told him that she had the Get and that he needed to leave the house.  Under Jewish law, Husband and Wife could no longer reside together in the same home as they were no longer married, even if they lived in separate bedrooms.  Husband packed his bag and moved in with friends.  Husband had been working at Pinsker's in Squirrel Hill for several months prior to this separation.  It was the best job he ever had financially during the parties' marriage, including their time in Pittsburgh.  But, instead of seeking an apartment in Pittsburgh, he immediately quit his job at Pinsker's and very shortly thereafter moved back to Israel.6, 7, 8

6 Based on the Get, Husband immediately remarried in Israel, despite the fact that the [d]ivorce in Pittsburgh was still pending.  Even as of the date of the hearing, the parties were still married to one another under Pennsylvania law.
7 Husband left all of his outstanding credit card bills behind.

[8] Husband left numerous unpaid debts when he left for Israel. Fortunately[,] most were in his name alone so the creditors could not come after Wife.

Husband provided no support for Wife or the 2 minor children who remained with Wife when he went back to Israel. Eventually Wife filed for support *in the Israeli courts* and began receiving $820/mo. in child support *about 15 months later.* She has received no alimony *pendente lite* or other support for herself since this litigation began. Wife has survived on gifts from her [m]other and several part-time jobs that she has managed to get. In 2013[,] she worked part time as a media planner, a home improvement salesperson at Sears and was a nanny for a local lawyer two days a week caring for his 2 children and preparing the family meals. In January 2014, Wife broke her ankle. This was a severe injury and required surgery with plates, wires, and [p]ins. It took her 6 months to recover, using physical therapy, crutches and a wheelchair.

After Wife recovered from her broken ankle, she decided to go back to school. She attended the California University of Pennsylvania and eventually received a Master's Degree in exercise science and wellness coaching. She took out a $27,265 school loan but has been unable to make any payments to date. She now owes $29,721.66. Her efforts to find a job in her new field have been fruitless. She made applications to UPMC for 4 different positions as well as many additional applications to possible employers, to no avail. She eventually entered into a contractual relationship with Michael Zaretsky, owner of the Greater Pittsburgh Wellness Club near the Fox Chapel Yacht Club. If the Club finds a client for her, they get 50% of whatever she makes. If she finds her own client, but uses their facility, she has to pay them 20% of what she makes. So far, she has met with just 1 client. Wife has also opened and registered a new business called "Wellistics", her new wellness coaching business[,] but has had no business from it to date.

Husband professes to having little to no income at the present time as he ostensibly takes care of his [m]other, who has Alzheimers.[9] Husband's testimony reveals that his entire work history is checkered with long periods of unemployment. When the parties lived in Israel, Wife was the principle wage[]earner on more than one occasion, despite being [m]other to 5 children. After the family moved to the USA, Husband decided that he would

shoot wedding videos. He limited his marketing to orthodox Jewish weddings in Pittsburgh or elsewhere if he could obtain work. Wife did his marketing and scheduling and tried to get as many as possible. She prepared a Website called "Only Simchas That Come[,]"[10] which she marketed to newly engaged Jewish couples. This business was not successful. He did obtain one video assignment[,] which took him to Poland. The fee for the job was $10,000. However, when all was said and done, he received only $3,300 as the "employer" bought him a new video camera[,] which he retained when the job was done. Husband said that his clients were all "very fussy" and so it took him "a lot of time" to edit and produce the product for his clients. The best job Husband ever had was acquired just 6 months before the parties separated. That job was at Pinsker's store in Squirrel Hill. He was being paid $15/hr. for a 40[-]hour week, which would have provided him with gross earnings of $31,000/yr. if he had stayed. Instead, he quit that job and went back to Israel[,] leaving Wife and the 2 minor children to fend for themselves.[11]

[9] This assertion that he takes care of his [m]other is belied by the fact that he keeps returning to the USA each year for very extended periods. In 2016[,] he came back to Pittsburgh from May 17 through September 23rd and then again from November 2016 through February 28, 2017. In addition, Husband's [m]other has a full-time caretaker Mondays-Fridays[,] who is paid $1,620 via insurance. In addition, Husband testified that his brother pays for all of their [m]other's expenses.

[10] *Simchas* are happy occasions or blessings in Yiddish, like weddings, bar/bat mitzvahs, baby namings, engagement parties, [and] family events.

[11] Husband testified that he paid [for] Chaya, their daughter, to go back to Israel, but the evidence shows that it was Wife who purchased the ticket for Chaya.

Husband testified that he earned approximately $800[,] which he used to buy himself and Levi, the fourth son, [] cell phones. He testified he voluntarily gave/gives $500/mo. to Chaya, who is the parties' emancipated adult daughter. In April 2013[,] he says he bought Levi and Israel clothes for Passover. But until Wife filed for support in the Israeli courts, he sent her nothing. He also testified that he "loaned" Mendel, the parties' oldest son, $5,600 so that he could buy a car. No documentation

of any sort confirms Husband's testimony as to any of the above "gifts" he made to the children.

Master's Report and Recommendation, 3/20/17, at 2-5.

The master then noted that the marital residence and the increase in Husband's pension were the only two marital assets. The master recommended that the house be sold "as is" with the proceeds divided 65% to Wife and 35% to Husband. The personal property in the house was to remain with Wife, but if any items were sold, the net amount was to be divided 60% to Wife and 40% to Husband. As for Husband's Israeli pension,[2] the master recommended that Husband solely retain his interest since Wife was to receive a greater percentage of the proceeds from the marital residence. The master also responded to Wife's request for retroactive alimony *pendent lite* (APL), recognizing that Husband had never contributed to the support of Wife since leaving in 2013. The master stated that she would grant this requist, "but for the fact that Husband is returning to Israel and [Wife] will never receive it." *Id.* at 6. Moreover, the master explained that this denial further supported the "disproportionate award in Wife's favor in the equitable distribution of the only marital asset here in the United States." *Id.* Lastly, the master recommended that Husband was to pay Wife's counsel $3,500 in legal fees she has incurred in pursuit of this divorce.

_____

[2] No information about Husband's pension was provided to the master, neither the current value nor the value at the date of the parties' marriage.

Both parties filed exceptions, some of which were granted by the trial court. Pertinent to the issues raised in this appeal by Husband, we recognize that Husband's exceptions #3 and #8 were granted in part.[3] Specifically, in granting these two exceptions, the trial court stated:

> Husband's Exception #3 is GRANTED in part. Both parties stipulated during the hearing that Wife was in possession of marital assets consisting of an E*Trade account with a value of $3,496 and a Citizens Bank account with a value of $5,735. These marital assets shall be subject to distribution with 60% awarded to Wife and 40% awarded to Husband based on the [m]aster's [r]ecommendation of the equitable distribution scheme. There was testimony offered during the hearing that Wife received the parties' 2012 IRS tax refund for her expenses. The exact value of said refund was unsupported by the [r]ecord. Therefore, this asset is not subject to allocation.
>
> . . .
>
> Husband's Exception #8 is granted in part. The Master erred in awarding $3,500 in counsel fees to Wife. The award is hereby reduced to $1,300, which represents a sanction against Husband under 52 Pa.C.S.[] § 2503 for Wife's representation regarding the Israel proceedings and the jurisdiction motion Wife's counsel presented in Allegheny County in 2015.

---

[3] Husband's exceptions #3 and #8 state:

> 3. The Master failed to value all marital assets, including the marital home, the marital home's fair rental value, the value of marital personality and the value of marital funds in the possession of plaintiff-Wife.
>
> . . .
>
> 8. The Master's award of attorneys' fees in the amount of $3,500.00 is contrary to the evidence and to Pennsylvania law. Further, [H]usband is without means to pay the same.

Husband's Exceptions to the Master's Report and Recommendation, 9/21/17.

Trial Court Order, 7/27/17, at 1-2.

Husband appealed to this Court from the July 27, 2017 order, raising the following seven issues:

a. Did the trial court abuse its discretion by refusing to award [Husband] a rental value/credit for the period of time the trial court awarded exclusive possession to [Wife] of the marital residence?

b. Did the trial court abuse its discretion by not providing a fair and equitable distribution of marital residence and further compound the err [*sic*] by issuing a self-contradicting order as to the distribution scheme?

c. Did the trial court abuse its discretion by allowing [Wife] to retain marital property without assessing its value and withholding the same from the equitable distribution scheme?

d. Did the trial court abuse its discretion by sanctioning [Husband] in the amount of $1,300.00 for participating in an Israeli proceeding that [Wife] initiated?

e. Did the trial court abuse its discretion by ordering [Husband] to pay a higher percentage of the repair costs for the marital residence than his equitable share of the property?

f. Did the trial court abuse its discretion in denying [Husband's] request for a new trial as the result of not being provided a fair and impartial hearing?

g. Did the trial court abuse its discretion by denying [Husband] the opportunity to complete his cross-examination of [Wife] and to impeach her through documents and inconsistent statements?

Husband's brief at 5-6.

The following principles guide our review:

Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or

- 8 -

failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

*Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006) (quoting *McCoy v. McCoy*, 888 A.2d 906, 908 (Pa. Super. 2005)). As we previously observed, in the context of an equitable distribution of marital property, a trial court has the authority to divide the award as the equities presented in the particular case may require. *Mercatell [v. Mercatell]*, 854 A.2d [609,] 611 [(Pa. Super. 2004)]. "In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Morgante v. Morgante*, 119 A.3d 382, 387 (Pa. Super. 2015) (quoting *Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009)). "[A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003).

*Cook v. Cook*, 186 A.3d 1015, 1025-26 (Pa. Super. 2018).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the analysis provided by the Honorable Jennifer Satler of the Court of Common Pleas of Allegheny County, dated October 12, 2017. We conclude that Judge Satler appropriately and correctly disposes of the issues raised by Husband and, accordingly, we adopt that opinion as our own and affirm the order on appeal on that basis.

Order affirmed.

Judgment Entered.

- 9 -

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/24/2018

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

CHAVA SALLY LILOVE,

     Plaintiff,

     v.

SHAUL LILOVE,

     Defendant.

No.: FD 12-006972

OPINION

BY:

HONORABLE JENNIFER SATLER
5073 Family Law Center
440 Ross Street
Pittsburgh, PA 15219

COPIES TO:

*Pro se* Plaintiff:
6327 Phillips Avenue
Pittsburgh, PA 15217

Counsel for Defendant:
Joseph Chester, Esq.
429 Fourth Avenue
Suite 1806
Pittsburgh, PA 15219

FILED
2017 OCT 12 AM 11:58
DEPT. OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

CHAVA SALLY LILOVE,

        Plaintiff,

v.

SHAUL LILOVE,

        Defendant,

No.:   FD 12-006972

## Opinion

**SATLER, J.**                                 **October 11, 2017**

Defendant appeals this Court's Order dated July 27, 2017 stemming from Defendant's

Exceptions and Plaintiff's Cross-Exceptions regarding equitable distribution of the parties'

marital estate. Defendant submitted the following Errors via a Notice of Appeal and Concise

Statement of Matters Complained of on Appeal filed September 21, 2017:

> 1. The trial court erred in denying Defendant's request for a new trial, as Defendant was not provided a fair and impartial hearing.
> 2. The trial court erred in denying Defendant's request for an award of rent owed for periods of time that he was out of possession of the marital residence due to a grant of exclusive possession.
> 3. The trial court erred by allowing Plaintiff to retain marital property without assessing its value and subjecting it to equitable distribution under the distribution scheme.
> 4. The trial court erred by denying Defendant a fair and equitable distribution scheme based upon the evidence of record and issuing a self-contradicting award scheme as to the marital residence.
> 5. The trial court erred by denying Defendant an opportunity to complete his cross-examination of Plaintiff and to impeach her through documents and inconsistent statements.
> 6. The trial court erred in assessing penalties in the amount of $1,300 against Defendant for Plaintiff's representation in Israel for proceedings that she initiated.
> 7. The trial court erred in ordering Defendant to pay 50% of the repair[s] costs of the marital residence.

Each of these errors will be addressed in turn.

1. The trial court erred in denying Defendant's request for a new trial, as Defendant was not provided a fair and impartial hearing.

On Exceptions, Husband argued that the Master's Report and Recommendation should be rejected and a new hearing should be set because the Report was the result of bias. Husband argued that the Master improperly testified as a witness on behalf of Wife in violation of Pennsylvania Rule of Evidence 605. Wife argued that the Master was permitted to examine a witness under Pennsylvania Rule of Evidence 614 and any statements made by the Master on the Record do not represent impartiality or bias.

During the Hearing, the Master made the following statements on Record:

Attorney Koblinsky: "I just want to get on the record since they called you a polygamist in pretrial statements."

Master: "No, I said in Pennsylvania he would be considered a polygamist because he remarried under the laws of another country while he was still legally married to his wife here in Allegheny County."

Transcript 2/9/17, p. 88.

Master: "To a court that had no jurisdiction over the property in Pennsylvania or the Wife. No jurisdiction."

Attorney Koblinky: "But she came into the Israeli court. To claim that Israel did not have jurisdiction over Chava is not true. She came into the Israel court and said, my client--"

Master: "I know what your position. It's wrong, Mr. Koblinsky. It's totally wrong. So don't pursue it. If you think I'm cutting you off without giving you a chance to present it, then you can file exceptions on it."

Transcript 2/7/17, p. 272.

Attorney Koblinsky: "I would just note for the record --"

Attorney Glasser: "No, you don't get to note anything for the record."

Master: "You can't note anything for the record."

Attorney Koblinsky: "I am not getting the same courtesies that were given to Mr. Glasser on Tuesday by either Mr. Glasser from me or by the Court while I was questioning

witnesses. I'm just making that for the record."[1]

Transcript 2/9/17, p. 142.

Attorney Kobylinski: And are you anticipating this will be a full-time job?

Wife: No.

Attorney Kobylinski: So, you would only sell part time?

Wife: I don't know what would be offered. I would have to see what the offer is and how it fits in.

Master: I can tell you. When you become an insurance agent, they give you a minimum monthly draw. But you are expected to sell. And if you don't sell, you are eventually pay that back. So, if you don't work at it, if you don't already have lined up an entire world of people who want to help you sell insurance, its not the way to make money.... Otherwise, it's a hard slot. Because if you look in the phone book, there are a zillion insurance agents all in Allegheny County already. And you will be starting out fresh.
Wife: Thank you.

Transcript 2/7/17, p. 218.

"While not capable of exact definition, the basic elements of procedural due process are adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction of the case." *Commw. V. Thompson*, 281 A.2d 856, 858 (Pa. 1971). The aforementioned statements were extraneous and had no bearing on the equitable distribution hearing or its' outcome. The statements themselves did not exhibit a bias or a failure to remain impartial on the part of the Master. Both parties' due process rights were honored during the hearing. This Court found that the Master did not error on this point.

2. The trial court erred in denying Defendant's request for an award of rent owed for periods of time that he was out of possession of the marital residence due to a grant of exclusive possession.

Husband argued on Exceptions that he was entitled to rental credit for the periods of time.

---

[1] During this exchange, Attorney Koblinsky was interrupting Attorney Glasser's direct examination of Wife. Attorney Glasser was questioning Wife about the equitable distribution petition she filed when Attorney Koblinsky wanted to put the Petition's date on the Record.

that he was out of possession of the marital residence. It has been established that "it is within the discretion of the trial court to grant rental value as a part of equitable distribution." *Trembach v. Trembach*, 615 A.2d 33, 37 (Pa. Super. Ct. 1992). In *Trembach*, the Court stated, "The basis of the award of rental value is that the party out of possession of jointly owned property (generally the party that has moved out of the former marital residence) is entitled to compensation for her/his interest in the property." Id. The Court went on to explain:

First, the general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property, provided there are no equitable defenses to the credit. Second, the rental credit is based upon, and therefore limited by, the extent of the dispossessed party's interest in the property. Generally, in regard to the marital home, the parties' have an equal one-half interest in the marital property. It follows, therefore, that in cases involving the marital home that the dispossessed party will be entitled to a credit for one-half of the fair rental value of the marital home. Third, the rental value is limited to the period of time during which a party is dispossessed and the other party is in actual or constructive possession of the property. Fourth, the party in possession is entitled to a credit against the rental value for payments made to maintain the property on behalf of the dispossessed spouse. Generally, in regard to the former marital residence, payments made on behalf of the dispossessed spouse will be one-half of the expenses including debt service on the property. This is so because equity places a presumption upon the dispossessed spouse of responsibility for expenses to the extent of her/his ownership interest, which is generally one-half. Finally, we note that whether the rental credit is due and the amount thereof is within the sound discretion of the court of common pleas.

*Trembach*, 615 A.2d at 37 (internal citations omitted).

"While each party is entitled to his or her equitable share of marital property, including the fair rental value of the marital residence, the trial court need not compute that equitable share as a credit to the non-possessory spouse, as long as the total distribution scheme is equitable. In equitably distributing the fair rental value between the parties, the trial court must consider the efforts of each party to preserve that asset." *Scheeman v. Scheeman*, 615 A.2d 1369 (Pa. Super. Ct. 1992).

Wife testified that she remained in the marital residence, one of the parties' only assets,

after Husband returned to Israel at the end of 2012. Transcript 2/7/17, p. 28-29. Husband attempted to argue that he was excluded from the marital residence, and therefore should have been given rental credit. The Record, however, shows that Husband was only excluded from the marital residence after he abandoned Wife and the children at the end of December 2012 following the obtainment of a Ghet.[2] Transcript 2/7/17, p. 28-29. Husband fled to Israel and never returned to the marital residence. Transcript 2/7/17, p. 29. In July 2013, Judge Cozza granted interim exclusive possession to Wife based on the fact that Husband had left the country and moved to Israel. Although there is no mortgage on the residence, Wife's residence in the home likely kept the home in better shape than it would have been if both parties abandoned the property. Given the overall distribution scheme, the lack of alimony, and Husband's abandonment of the marital residence, this Court denied Husband's Exception, finding that the Master acted within her discretion in not awarding Husband rental credit.

3. The trial court erred by allowing Plaintiff to retain marital property without assessing its value and subjecting it to equitable distribution under the distribution scheme.

The Master included the marital residence, Husband's pension and the property in the marital residence in the marital estate. Husband filed Exceptions arguing that the Master failed to assign a value to marital property in Wife's possession and failed to include certain property in the overall distribution of the marital estate. Specifically, Husband argued that Wife was in possession of marital property in the form of two separate bank accounts, neither of which were included in the overall distribution. Husband argued that Wife was in possession of the parties' 2012 IRS tax refund, which was not included in the marital estate. Husband also argued that Wife created a business, a value for which was unassigned. Lastly, Husband argued that the Master erred in failing to assign a value to the personal property within the marital residence that

---

[2] A Ghet is a divorce by Jewish Law. Transcript 2/7/17, p. 28.

was distributed to Wife.

23 Pa. C.S.A. §3501 defines marital property as "all property acquired by either party during the marriage and the increase in value of any non-marital property."

In regards to the E*Trade account and Citizens bank account, the parties stipulated as follows during the hearing:

> Attorney Glasser: "So, we would stipulate that at the time of separation, Wife had the following assets in her possession. An E*trade account with a value of $3,496. A Citizens account with a value of $5,735. That was a bank account." Transcript 2/7/17, p. 73.

> Attorney Glasser: "That's a stipulation. Do we agree on those things?" Transcript 2/7/17, p. 74.

> Attorney Koblinsky: "Yes." Transcript 2/7/17, p. 74.

Despite this stipulation, the Master failed to include the value of the E*Trade account and the Citizens bank account in the marital estate as an asset distributed to Wife.

As to the 2012 tax return, Wife testified that she retained the parties' 2012 IRS income tax return. Transcript 2/7/17, p. 254. Wife, however, was unable to state to the exact amount she received. Transcript 2/7/17, p. 254. She testified that it was around $7,000. Transcript 2/7/17, p. 255. Neither party offered evidence of the actual value of the income tax return. Transcript 2/7/17, p. 255. Given this lack of substantiating evidence, it was not error on the part of the Master to exclude this value from the marital estate.

Wife created a business during the marriage called Main Event, LLC, which was still in existence at the time of the hearing. Transcript 2/7/17, p. 148. Wife testified, however, that even though the business was registered, it never generated an income or profit. Transcript 2/7/17, p. 148. Wife acknowledged that there is a website for the business, but it is not active. Transcript 2/7/17, p. 148. Wife explained that she does not pay an annual registration fee. Transcript 2/7/17, p. 149. Based on Wife's testimony, this Court found that the Master did not error in failing to

include Wife's business in the marital estate because it has not generated income for Wife. Further, neither party offered expert testimony regarding what the value of the business could be.

Ultimately, this Court entered the following Order on Husband's Exception regarding the accounts, Wife's business, and the IRS tax refund:

> Husband's Exception #3 is GRANTED in part. Both parties stipulated during the hearing that Wife was in possession of marital assets consisting of an E\*Trade account with a value of $3,496 and a Citizens Bank account with a value of $5,635. These marital assets shall be subject to distribution with 60% awarded to Wife and 40% awarded to Husband based on the Master's Recommendation of the equitable distribution scheme. There was testimony offered during the hearing that Wife received the parties' 2012 IRS tax refund for her expenses. The exact value of said refund was unsupported by the Record. Therefore, this asset is not subject to allocation.

July 27, 2017 Order of Court.

With regards to the marital property Wife retained, Wife testified that when the parties purchased the marital residence, they bought various furniture pieces from garage sales and estate sales as well as a few stores. Transcript 2/7/17, p. 297-307. Wife stated that porch table and chairs were purchased for under one hundred dollars. Transcript 2/7/17, p. 305. Wife also stated that the parties purchased furniture for the master bedroom from an estate sale. Transcript 2/7/17, p. 306. There was a bed and desk purchased from Costco and Staples. Transcript 2/7/17, p. 307. Lastly, a couch and coffee table were purchased through a furniture store for one thousand two hundred dollars. Transcript 2/7/17, p. 307. Wife explained that any other furniture in the home came from the parties' previous residence or was in the marital property upon purchase. Transcript 2/7/17, p. 307. Based on this testimony, the Master Recommended:

> All of the personal property in the marital residence shall remain with Wife for use in her new residence. If she sells any of the furniture or furnishings, after any costs associated with the sale have been recouped, the net shall be divided 60% to Wife and 40% to Husband. The Master failed to assign a value to the property that was awarded to Wife.

> In light of the value of the property, the distribution scheme as a whole, the fact that the

parties' minor child remains with Wife, and the caveat that any sale proceeds are to be shared with Husband, there was no error on the part of the Master in this Recommendation.

4. The trial court erred by denying Defendant a fair and equitable distribution scheme based upon the evidence of record and issuing a self-contradicting award scheme as to the marital residence.

The Master Recommended that the sale proceeds from the marital residence be divided 65% to Wife and 35% to Husband. The Master further Recommended that if Wife sells any of the personal property in the marital residence, the proceeds shall be divided 60% to Wife and 40% to Husband. The other marital asset subject to distribution was Husband's Israel pension, a value of which was unable to be assigned. Husband was awarded this entire asset in light of the disproportionate percentage of the house proceeds. Following the Master's Recommendation, Husband filed Exceptions arguing that the distribution was not fair or equitable and self-contradicting given the different percentages for the assets.

Equitable distribution is governed by 23 Pa. C.S.A. §3502, which provides:

(a) General rule - Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.
(2) Any prior marriage of either party.
(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
(4) The contribution by one party to the education, training or increased earning power of the other party.
(5) The opportunity of each party for future acquisitions of capital assets and income.
(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

    (10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

    (10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa. C.S.A. §3502.

When determining the appropriate distribution scheme, "the court must not presume a 50/50 distribution but must consider all relevant factors." *Anderson v. Anderson,* 822 A.2d 824, 826 (Pa. Super. Ct. 2003).

First, Husband argues that the self-contradicting nature of the Master's Recommendation was an abuse of discretion. The relevant statute specifically states when determining equitable distribution of martial assets, "The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets." 23 Pa. C.S.A. §3502. As such, the Master's use of differing percentages was not an abuse of discretion.

Husband also argued that the Master failed to properly explain the consideration of each factor under Section 3502. The statute, however, merely provides the relevant factors to be considered. The parties were married on March 13, 1991 and separated April 20, 2012. Transcript 2/7/17, p. 6. After separation, Wife obtained a Master's Degree in exercise science and wellness coaching, which is burdened by a $29,721.66 student loan. Transcript 2/7/17, p. 34; 36. Wife has been unable to obtain full-time employment in her field. Transcript 2/7/17, p. 35. Husband testified to having little to no income, as he is taking care of his Alzheimer's burdened mother. Transcript 2/9/17, p. 71-80. Husband does not possess a higher education that would

assist in obtaining future employment or assets. Further, Husband's employment history is inconsistent. Transcript 2/9/17, p. 71-80. Neither party testified to possession of assets outside of the marital estate. Neither party contributed to the education or training of the other. Wife arguably has a greater opportunity for the acquisition of income; however, she has been unable to obtain employment in her field since obtaining the degree. The marital estate is small considering the duration of the marriage. It consists mainly of the marital residence, which is to be sold by the parties, and Husband's Israel pension, a value of which could not be assigned. Wife remains in the marital residence where she is the primary custodian of the parties' minor child. Transcript 2/7/17, p. 12. The parties' emancipated children have also temporarily taken residence with Mother in the United States. Transcript 2/7/17, p. 12. The Master explained when making her Recommendation that she "has reviewed all of the factors set forth in Section 2503 of the Pennsylvania Divorce Code of 1980 as amended." Upon review of the Record and the factors provided in Section 2503, this Court determined that there was no error in the Master's distribution scheme as Recommended.

5. The trial court erred by denying Defendant an opportunity to complete his cross-examination of Plaintiff and to impeach her through documents and inconsistent statements.

Husband filed the following exception to the Master's Report and Recommendation:

The Master refused to permit defendant-Husband to establish plaintiff-Wife had perjured herself. Plaintiff-Wife offered unsolicited testimony about the rarity of her international travels, when defendant0Husband demanded her to allow inspection of her passports after serving her with proper notice, the Master sustained plaintiff Wife's objection.

Husband failed to file Exceptions asserting that he was unable to complete his cross-examination. As such, this issue has been waived.

On Exceptions, Defendant argued that the Master committed reversible error by failing to permit Defendant to inspect Plaintiff's passport and question her regarding the same after she

testified to traveling only on limited occasions.

Pennsylvania Rule of Civil Procedure 234.3 provides:

(a) A party may compel the attendance of another party or an officer or managing agent thereof for trial or hearing by serving upon that party a notice to attend substantially in the form prescribed by Rule 234.7. The notice shall be served reasonably in advance of the date upon which attendance is required. The notice may also require the party to produce documents or things.

Pa. R.C.P. 234.

In *Smith*, a credit card holder was given 48 hours notice via facsimile to appear in a debt collector's trial. It was determined that said notice was unreasonable. *Commw. Fin. Systems, Inc. v. Smith*, 15 A.3d 492, 500 (Pa. Super. Ct. 2011). The Court stated, "Where, as here, the facts are undisputed and the inference plain, the determination of what constitutes a reasonable time is a question of law for the court. By 'reasonable time' is to be understood such promptitude as the situation of the parties and the circumstances of the case will allow. It never means an indulgence in unnecessary delay." *Id.* at 503. Although the facts of *Smith* differ from this case because it involved a person appearing for a trial rather than producing documents for a trial previously scheduled, the issue of timely notice is the same.

This case was originally scheduled before the Master on July 28, 2016. On July 15, 2016, Husband's counsel served Wife a notice to attend that directed Wife to bring her passport to the hearing. The hearing was continued due to unresolved discovery matters. Following a hearing with the discovery master, the equitable distribution hearing was rescheduled on January 9, 2017 for February 7, 2017. Despite nearly a month between the scheduling order and the actual hearing, Husband's counsel failed to serve a new notice to attend and produce until the afternoon of February 6, 2017, less than a day before the hearing was to begin. Transcript 2/7/17, p. 168. Wife's counsel objected during the hearing to Husband's questions regarding the passport,

arguing that notice was unreasonable. Transcript 2/7/17, p. 168-171. Wife's counsel stated that the notice was sent to him at 1:37pm while he was at a Master's conference in a different county. Due to the time constraints, Wife's counsel was unable to communicate with Wife regarding the notice.

Without a ruling on the objection, Husband's counsel voluntarily moved onto the next topic, thereby abandoning the issue of Wife's passport. Transcript, 2/7/17, p. 171. As such, this issue has been waived. There is no basis upon which to file exceptions, as the passport was never admitted or excluded from evidence. The harm or prejudice done to Husband on this issue was the result of Husband's counsel, not the product of a sustained objection and excluded testimony/evidence. Regardless, this Court finds that the notice given to Wife was unreasonable.

6. The trial court erred in assessing penalties in the amount of $1,300 against Defendant for Plaintiff's representation in Israel for proceedings that she initiated.

During the parties' equitable distribution hearing, Wife requested counsel fees. In her Report and Recommendation, the Master found, "From Husband's 40% share of the net proceeds from the sale of the house, he is to pay Wife's counsel $3,500 at the time of closing for legal fees she has incurred in pursuit of this divorce." Husband filed an Exception to this Recommendation arguing that, "the Master's award of attorneys' fees in the amount of $3,500 is contrary to the evidence and to Pennsylvania law." Husband argued that a showing of need did not support the Master's Recommendation and that Defendant failed to act in such a fashion as to warrant sanctions.

Counsel fees may be awarded to a party in a divorce proceeding as either a sanction under 42 Pa. C.S.A. §2503 or based upon a showing of need. *McCoy v. McCoy*, 888 A.2d 906, 910 (Pa. Super. Ct. 2005). "The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce

action without being placed at a financial disadvantage; the parties must be 'on par' with one another." *Busse v. Busse*, 921 A.2d 1248, 1258 (Pa. Super. Ct. 2007). Counsel fees are to be awarded after consideration of the following factors: the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution. *Id.* In most cases, "each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate." *Id.*

The Master failed to make a determination of need to justify the counsel fees awarded. Upon review of the Record, this Court determined that a need-based award of counsel fees is not justified. The Master found that Husband credibly testified to his lack of earnings. As such, Husband has no ability to pay counsel fees. The marital estate is minimal at best – proceeds from the sale of the marital residence and Husband's Israel pension. In fact, the Master Recommended that Husband pay the counsel fees owed to Wife from the sale proceeds of the marital residence because Husband has no access to liquid funds. Wife has access to greater financial resources given her employment history and degree as well as the more favorable distribution percentage of the marital estate. Based on these factors, this Court determined that the counsel fees awarded by the Master were an abuse of discretion, as they do no support a showing of need.

Alternatively, counsel fees may be awarded as a sanction under 42 Pa. C.S.A. §2503, which provides:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: (6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter.

42 Pa. C.S.A. §2503.

Wife initiated this divorce proceeding by filing a Complaint on April 30, 2012 in

Allegheny County, Pennsylvania. Eventually, Husband left the United States to return to Israel. Transcript 2/7/17, p. 74. While in Israel, Wife testified that Husband filed two cases relating to the parties' property and divorce despite Wife having already filed for divorce in Allegheny County, Pennsylvania. Transcript 2/7/17, p. 64-66. Wife's counsel in the equitable distribution hearing was also her counsel in the Israel proceedings. Transcript 2/7/17, p. 66-68. On February 3, 2016, this Court entered an Order confirming "Jurisdiction over the property division/equitable distribution of the parties is vested in the Commonwealth of Pennsylvania, Husband having never objected to same and, indeed, having fully participated in the litigation." Following entry of the February Order, both Israel cases were dismissed. Transcript 2/7/17, p. 64-66. The February 3, 2016 Order also preserved Wife's claim for counsel fees.

During the equitable distribution hearing, Wife's counsel testified that Wife was charged a lump sum for the divorce proceedings. Transcript 2/7/17, p. 308-309. Specifically in regards to the Israel proceedings, Wife's counsel testified that her fee was $1,300. Transcript 2/7/17, p. 309-310.

> Attorney Kobylinski: "If I'm understanding you, you are claiming, as it relates to the Israel issue, Israel injunction, that fee is 1350?"
>
> Attorney Glasser: "I think 1,300. Its 800 plus 500."
>
> Transcript 2/7/17, p. 310.

Wife's counsel went on to explain that the fee represented the proceedings in Israel, the presentation of the jurisdiction motion in Pennsylvania on February 3, 2015, and preparation for discussing the matter at the equitable distribution hearing. Based on this testimony, this Court entered the following Order as it pertains to counsel fees:

> Husband's Exception #8 is GRANTED in part. The Master erred in awarding $3,500 in counsel fees to Wife. The award is hereby reduced to $1,300, which represents a sanction against Husband under 42 Pa. C.S.A. §2503 for Wife's representation regarding the Israel

proceedings and the jurisdiction motion Wife's counsel presented in Allegheny County in 2015.

Order of Court dated July 27, 2017.

7. The trial court erred in ordering Defendant to pay 50% of the repair[s] costs of the marital residence.

Wife filed Exceptions to the Master's Recommendations regarding the marital residence. Wife argued, "the Master erred in recommending the marital residence be placed on the market in as-is condition despite the house need repairs." Both parties resided in the marital residence from the time of purchase until the end of 2012 when Husband left the United States. Transcript 2/7/17, p. 28. Wife and at least the parties' minor child remained in the marital home from the end of 2012 through the equitable distribution hearing. During the hearing, Wife testified in reference to having the property sold, "At a minimum, the floors on the two levels need to be changed." Transcript 2/7/17, p. 100. Wife explained that the plaster walls were in need of repair. Transcript 2/7/17, p. 101. Wife also stated, "There are structural problems. There is some water that's leaking from the basement. So, there are repairs and I've actually done some of those repairs, but they came back. So the water is leaking. Those would be the bare minimum. The kitchen could use new, some type of cabinets. They are falling a paper. That would be able to sell. But I would at least want the bare minimum. The paint, the plaster, the carpeting." Transcript 2/7/17, p. 101-102. Wife stated that she would be willing to split the cost of the repairs with Husband upon sale. Transcript 2/7/17, p. 102.

In response, the Master stated, "Usually what we do is we suggest that all repairs that are suggested by the realtor as necessary to maximize the sale price on the house should be attended to." Transcript 2/7/17, p. 102. Despite this statement, the Master recommended that the house be sold "as-is." 23 Pa. C.S.A. §3323 provides, "In all matrimonial causes, the court shall have full

equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties." 23 Pa. C.S.A. §3502 tasks the court with equitably dividing, distributing or assigning the marital property between the parties in such percentages and in such manner as the court deems just.

This Court determined that the Master abused her discretion in Recommending that the marital residence be sold "as-is." In order to maximize profits obtained from the sale of the marital property and protect the financial interest of the parties, this Court found that the parties should follow the recommendations of a real estate professional regarding repairs. This would guarantee that the parties' maximize profits from the sale of the marital residence, which comprises a majority of the parties' marital estate. As such, this Court ordered:

> Wife's Cross-Exception #1 is GRANTED. Within 45 days following the entry o a divorce decree in this matter and this Order becoming final, the parties shall agree upon a realtor to list the marital residence for sale and follow the recommendations of said realtor including the suggested listing price of the property. If any repairs, as recommended by the realtor, need to be made on the marital residence in order to maximize the sale price of the property, said repairs shall be completed. Both parties shall share equally in the costs of the repairs.

In the interest of equity, the repairs were Ordered to be split between the parties. The property was marital and utilized by both parties and their children until Husband opted to leave the United States and return to Israel. Exclusive possession was granted to Wife only after Husband had voluntarily left the country, abandoning the marital residence.

BY THE COURT:

_____
HONORABLE JENNIFER SATLER